**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ADRIAN JOEL GARCIA-GARCIA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-6902** |
| | : | |
| **J.L. JAMISON, et al.** | : | |

# ORDER

**AND NOW**, this 28th day of September 2026, upon consideration of Adrian Joel Garcia-Garcia's petition for writ of *habeas corpus* under 28 U.S.C. § 2241 (**DI 1**), the government's response (**DI 5**), and Mr. Garcia-Garcia's reply (**DI 6**), it is **ORDERED** that Mr. Garcia-Garcia's petition (**DI 1**) is **DENIED** for the reasons that follow:

1. Mr. Garcia-Garcia is a native of and citizen of Venezuela who, after entering the United States illegally from Mexico, was apprehended by United States Border Patrol (USBP) on August 12, 2022 in the Rio Grande Valley in Texas. DI 5-2 at 2.[1] He was arrested, transported to the Rio Grande Valley Sector Centralized Processing Center in McAllen, Texas, processed as a "Notice to Appear," and released on recognizance pending his first removal hearing on October 11, 2022, in Arlington, Virginia. *Id.*; DI 5-3 at 1. Mr. Garcia-Garcia's next hearing in the removal process is scheduled for March 10, 2027 in the Philadelphia Immigration Court. DI 1 at ¶ 21.

2. Mr. Garcia-Garcia complied with the conditions of his release. DI 1 ¶ 21. He regularly attended hearings before an immigration judge and completed required check-ins with Immigration and Customs Enforcement (ICE). *Id.* He also claims to have submitted an asylum application. *Id.* Nevertheless, four years after his release, on September 9, 2026 at one of Mr.

[1] We adopt the sequential pagination supplied by the CM/ECF docketing system.

Garcia-Garcia's scheduled check-ins, ICE arrested Mr. Garcia-Garcia again. DI 5 at 8. ICE executed and served a Form I-286, Notice of Custody Determination, advising Mr. Garcia-Garcia of its decision to detain him for the remainder of his removal proceedings. DI 5-1 at 1. On that form, Mr. Garcia-Garcia acknowledged this determination and requested that an immigration judge review the custody determination. *Id.* Mr. Garcia-Garcia has since been detained at the Philadelphia Federal Detention Center. DI 1 at ¶ 2.

3. Mr. Garcia-Garcia filed this petition for writ of *habeas corpus* on September 10, 2026. Mr. Garcia-Garcia seeks immediate release from Department of Homeland Security (DHS) as remedy for what he describes as unlawful detention. *Id.* at ¶ 9. Specifically, Mr. Garcia-Garcia alleges that his re-detention by ICE, absent individualized materially changed circumstances, violates the Administrative Procedure Act (APA) and his constitutional right to due process under the Fifth Amendment. *Id.* at ¶ 8.

4. The Government responded on September 16, 2026 that the decision to detain Mr. Garcia-Garcia was lawfully made pursuant to 8 U.S.C. § 1226(a), which gives the Attorney General discretion to detain or release noncitizens on bond pending a decision on their removal. DI 5 at 12; *see* 8 U.S.C. § 1226(a); *Nielsen v. Preap*, 586 U.S. 392, 397 (2019). The Government's chief argument is that Mr. Garcia-Garcia's petition should be denied because he has not yet exhausted the administrative remedies available to him to contest his detention in immigration court pursuant to Section 1226(a). *Id.* at 11-14. Section 1226 and accompanying regulations afford detained aliens a bond hearing before an immigration judge to contest their initial custody determination. 8 C.F.R. § 236.1(d)(1); *Nielsen*, 586 U.S. at 398. A detained alien may be released from custody if he can demonstrate to the immigration judge that he is not a

flight risk and does not pose a danger to the community. *Id.* If the immigration judge rules against the alien, the alien may also then appeal that determination to the Board of Immigration Appeals (BIA). 8 C.F.R. § 236.1(d)(3). Section 1226 does not contain a statutory exhaustion requirement. 8 U.S.C. 1226. Nevertheless, we agree with the Government that exhaustion is required here.

5. District courts may grant writs of *habeas corpus* to prisoners "in custody in violation of the Constitution or laws or treaties of the United States," but it is generally well settled that those in federal custody must avail themselves of available administrative remedies before they may pursue relief in court under Section 2241. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Ogunlana v. Warden Allenwood FCI Low*, No. 26-1064, 2026 WL 1209056, at *1 (3d Cir. May 4, 2026); 28 U.S.C. § 2241(c)(3). When, as here, exhaustion is not statutorily required, it is considered prudential. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Courts may waive prudential exhaustion if (1) administrative remedies would be futile; (2) the administrative action clearly and unambiguously violates statutory or constitutional rights; or (3) the administrative procedure is clearly shown to be inadequate to prevent irreparable injury. *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). Mr. Garcia-Garcia posits that each of those exceptions applies here with some force. DI 6 at 2. We address each in turn below.

6. To argue that the immigration courts would be futile, Mr. Garcia-Garcia makes two arguments. He first argues that the administrative process would be futile because it applies only after initial custody determinations, which he contends ICE never made for his re-arrest. DI 6 at 3. The Government, however, provided its Notice of Custody Determination, in which a Supervisor Detention and Deportation Officer (SDDO) determined that Mr. Garcia-Garcia

should be detained and not released. DI 5-1 at 1. Mr. Garcia-Garcia does not contest the validity of the SDDO's signature or authority, but only that the substantive assessment underlying the determination was inadequate. Di 6 at 3. We fail to see how the I-286 does not demonstrate an initial custody determination for purposes of triggering the administrative process.[2]

7. Mr. Garcia-Garcia's second futility argument is that the bond hearing process would be futile because immigration judges "lack authority to declare that ICE acted unlawfully in the manner that they detained a noncitizen." DI 6 at 5. In our view, requiring the immigration judge's assessment is not only permissible, but a "particularly important" fact-finding function for cases involving constitutional issues. *See Piatukho v. Jamison,* No. 26-cv-6413, Opinion (DI 8 at 7) (E.D. Pa Sept. 15, 2026) (Leeson, J.) (quoting *Republic Indus., Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir. 1982)). As such, immigration judges are a sufficient mechanism to consider Mr. Garcia-Garcia's claims. *See, e.g.*, *Matter of H-A-A-V-, Respondent*, 29 I&N Dec. 233, 237 n.6 (BIA 2025) ("The Board has the authority to evaluate constitutional issues, including whether a respondent's Due Process rights under the Fifth Amendment of the United States Constitution have been violated"); *Matter of M-D-C-V-*, 28 I&N Dec. 18, 29-30 (BIA 2020); *Matter of Santos*, 19 I&N Dec. 105, 107-10 (BIA 1984).

---

[2] Although Mr. Garcia-Garcia does not address whether "initial custody determination" refers only to the first custody determination made during removal proceedings, we recognize that the custody determination at issue is not his first. *See* DI 1 at ¶ 20. The regulations, however, expressly authorize immigration officials to revoke a prior release and return a noncitizen to custody. See 8 C.F.R. § 236.1(c)(9). We therefore understand "initial custody determination" to refer to the custody determination associated with the noncitizen's present detention, including a detention following the revocation of an earlier release. *See id.* § 236.1(d)(1).

8. Mr. Garcia-Garcia next argues that the second exception to exhaustion applies because ICE's actions "clearly and unambiguously" violated his due process rights. *See* DI 6 at 4. The Fifth Amendment's Due Process Clause prohibits the deprivation of liberty without due process and applies to aliens in the context of removal proceedings. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993) (internal quotation marks omitted). To waive exhaustion, Mr. Garcia-Garcia must therefore demonstrate that his arrest and detention not only violated his due process rights, but clearly and unambiguously violated those rights. *Lyons*, 840 F.2d at 205. This is a high burden.

9. Mr. Garcia-Garcia frames his argument both in terms of substantive and procedural due process. *See id.*; DI 1 at ¶¶ 33-46. The substantive component of the Due Process Clause applies to government action that "amounts to an abuse of official power that 'shocks the conscience.'" *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994) (quoting *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 126 (1992)). We cannot agree that Mr. Garcia-Garcia's detention clearly and unambiguously shocks the conscience. ICE detained Mr. Garcia-Garcia pursuant to its statutory authority, executed and served a warrant and a written custody determination at the time of his arrest, honored his request for review by an immigration judge, and transmitted that request to the immigration court two days later. DI 5 at 8-9; DI 5-1; DI 5-4. Regardless of any constitutional deficiencies Mr. Garcia-Garcia may ultimately establish in this process, this record does not clearly and unambiguously demonstrate the sort of abuse of official power so antithetical to liberty or justice to warrant waiving exhaustion. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

10. As for procedural due process, both parties rely on the three-factor balancing test

set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See* DI 5 at 12-14; DI 6 at 7-10. Given the demonstrated substantial weight of petitioner's liberty interest under the first factor and the Government's interests in immigration enforcement and public safety under the third, the parties' dispute largely turns on the second: the risk of erroneous deprivation under the procedures employed and the probable value of additional safeguards. *See* DI 5 at 18; DI 6 at 8-10. We need not resolve precisely how that factor weighs, however, because competing considerations are sufficient to establish that any procedural due process violation is not so clear and unambiguous as to excuse exhaustion. *See Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process").[3]

11. Because prudential exhaustion may also be waived when the administrative action "clearly and unambiguously" violates statutory rights, Mr. Garcia-Garcia's APA claims must be addressed. *Lyons,* 840 F.2d at 205. Mr. Garcia-Garcia alleges that ICE violated the APA by rescinding a purported longstanding "Changed Circumstances Policy." *See* DI 1 at ¶¶ 71-85. He contends that the rescission was arbitrary and capricious because ICE departed from longstanding policy without explanation, failed to consider relevant reliance and constitutional interests, and relied on improper considerations. *Id.* at ¶¶ 71-79. He separately contends that the rescission is contrary to constitutional rights because it permits ICE to re-arrest previously released noncitizens absent materially changed circumstances. *Id.* at ¶¶ 80-85. These allegations

[3] Some courts in this district have used the Third Circuit's reasoning in *Buele Morocho v. Warden Philadelphia FDC*, 2026 WL 2546223 (3d Cir. Aug. 28, 2026) to weigh the second *Mathews* factor heavily in favor of alien petitioners detained under Section 1226(a). *See, e.g., Regalado-Nauta v. Jamison*, No. 26-cv-6834, Memorandum Opinion (DI 5 at 8) (E.D. Pa. Sept. 16, 2026) (Beetlestone, J.). In our view, the bond re-determination process under 8 U.S.C. § 1226(a) changes *Buele Morocho*'s § 1225 analysis and makes the question sufficiently close so as not to clearly warrant waiving prudential exhaustion.

do not establish the sort of clear and unambiguous statutory violation necessary to excuse exhaustion here. The parties dispute, among other things, whether the alleged rescission constitutes a discrete and final agency action subject to APA review at all and whether ICE's individual detention decisions are committed to agency discretion. *See* DI 5 at 16-21. We find that these substantial threshold disputes preclude us from concluding that ICE clearly and unambiguously violated the APA.

12. Mr. Garcia-Garcia last argues that excusing exhaustion is warranted because the available administrative procedure is clearly shown to be inadequate to prevent irreparable injury. DI 6 at 4-5. We recognize that in some other situations, ICE's conduct has indeed deprived petitioners of meaningful access to the administrative process. *See Dos Reis v. McShane*, No. 26-cv-03775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (Sanchez, J.); *Dzehtisarou v. Mullin*, No. 26-cv-5060, 2026 WL 2211392, at *4-5 (E.D. Pa. July 31, 2026) (Rufe, J.); *Imamova v. Rife*, No. 26-cv-6631, Order (DI 8) (E.D. Pa. Sept. 21, 2026) (Murphy, J.). Here, there is no such comparable evidence. ICE has complied with this Court's order prohibiting Mr. Garcia-Garcia's transfer outside the district during the pendency of this habeas petition, served him with a Form I-286 notifying him of its custody determination, afforded him the opportunity to request review of that determination by an immigration judge, and timely transmitted that request to the immigration court; nor is there evidence that ICE has obstructed, delayed, or otherwise interfered with his ability to pursue that review. *See* DI 5 at 8-10. Mr. Garcia-Garcia's bond-redetermination request remains pending, and nothing presently suggests that the administrative process will be unavailable to him.[4] *See id.* at 6, 9.

[4] The fact that Mr. Garcia-Garcia is currently housed at the Philadelphia Federal

13. Therefore, because we do not think Mr. Garcia-Garcia has established valid grounds for excusing the prudential requirement of exhausting the administrative remedies before him under the immigration courts, the petition for writ of *habeas corpus* is **DENIED WITHOUT PREJUDICE** and this Court's no-transfer order (DI 2) is **HEREBY VACATED** so that Mr. Garcia-Garcia may proceed with the administrative process. The Clerk of the Court shall **CLOSE** this case.

/s/John F. Murphy, U.S.D.J.

**MURPHY, J.**

Detention Center, a transient holding center without bond hearing capabilities, is, we believe, of no consequence. See DI 5 at 9-10. Mr. Garcia-Garcia is held there still only because of this Court's no-transfer order (DI 2) and the Government maintains he will be processed appropriately once that order is lifted. See DI 5 at 9-10; *but see Torres Guevara v. Warden of Federal Detention Center Philadelphia, et al.*, No. 2:26-cv-07077, Memorandum Opinion (DI 7) (E.D. Pa. Sept. 22, 2026) (Savage, J.) (waiving exhaustion requirement because it was "unclear" how the Philadelphia Federal Detention Center could facilitate bond hearings).